UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK PURPURA,<br><br>   Plaintiff,<br><br>v.<br><br>DOES MEMBERS OF THE INMATE CLASSIFICATION COMMITTEE, et al.,<br><br>   Defendants. | Case No.: 20cv1688-JAH(BGS)<br><br>**REPORT AND RECOMMENDATION TO DENY DEFENDANT'S MOTION TO DISMISS [ECF 29]** |

   Presently before the Court is a Motion to Dismiss Fourth Amended Complaint filed by Defendant R. Calvert. (ECF 29.) Plaintiff filed an opposition to the motion. (ECF 34.) Defendant filed a reply. (ECF 36.)

   This Report and Recommendation is submitted to United States District Judge John A. Houston pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c). For the reasons discussed below, **IT IS RECOMMENDED** that the Motion to Dismiss be **DENIED**.

## I. BACKGROUND

### A. Procedural History

Following the filing of the initial Complaint (ECF 1) and the Court's pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b), Plaintiff filed a First Amended Complaint ("FAC"). (ECF 6, 9.)

Plaintiff's First Amended Complaint ("FAC"), asserting claims for violation of California Government Code § 844.6(d) and the Eighth and Fourteenth Amendments against Defendant Calvert and Does Members of the Inmate Classification Committee ("Doe Defendants"),[1] alleged that Plaintiff, a Level 2 inmate, was stabbed by a Level 4 inmate with a known history of attacking inmates. (ECF 18 (FAC ¶¶ 10, 12, 14, 17).) Plaintiff contended that putting Level 2 inmates and Level 4 inmates in the same yard put Level 2 inmates at severe risk of harm and that Plaintiff was stabbed and cut when attacked by a Level 4 inmate. (ECF 18 at 2 (summarizing allegations of FAC).) In its order granting Defendant Calvert's motion to dismiss the FAC with leave to amend, the Court found the FAC "lacked sufficient allegations that Defendant Calvert knew of a substantial risk of serious harm to Plaintiff's health or safety." (*Id.* at 6.) More specifically, the Order indicated the FAC lacked allegations showing Defendant "was aware of facts from which the inference could be drawn that a substantial risk of harm existed," *i.e.* deliberate indifference. (*Id.* at 6-7.) The district court also declined to exercise supplemental jurisdiction over Plaintiff's state law claim and dismissed it without prejudice. (*Id.* at 7-8.)

---

[1] In its screening order, the Court stated that while Doe pleading is generally disfavored, "where the identity of an alleged party is not known prior to filing of an action, Ninth Circuit authority permits Plaintiff the opportunity to pursue appropriate discovery to identify the unknown Doe, unless it is clear that discovery would not uncover their identity, or his pleading requires dismissal for other reasons. (ECF 6 at 5 n.2.) The Court indicated that once the Doe defendants are identified, Plaintiff must substitute their true names in an amended pleading before the United States Marshal will be able to execute service upon them. (*Id.*)

On November 29, 2021, Plaintiff filed a Second Amended Complaint ("SAC"). (ECF 19.) Plaintiff then filed a Third Amended Complaint ("TAC") on December 20, 2021. (ECF 20.) In the TAC, Plaintiff alleged that the Inmate Classification Committee ("ICC") has "four levels of classification" for inmates and that the "lower the number assigned, the less of a risk the inmate is deemed to be." (TAC ¶¶ 8-9.) Plaintiff asserted that "Level 2 inmates are never supposed to be lodged with Level 4 inmates" and "Defendants knew that housing Level 2 inmates alongside Level 4 inmates puts Level 2 inmates at severe risk of harm." (*Id.* ¶¶ 11, 17.) Plaintiff claimed that he was a "Level 2 inmate housed with Levels 2 and 3" and Inmate Bevell was a Level 4 inmate "improperly placed [into] Plaintiff's yard," and realleged his injuries, including increased anxiety and post-traumatic stress disorder resulting from an attack by Bevell. (*Id.* ¶¶ 10, 12-13, 22, 24.) The TAC, like the dismissed FAC, also alleged "housing Level 2 inmates alongside Level 4 inmates puts Level 2 inmates at severe risk of harm" and that Inmate Bevell had a "history of attacking inmates." (*Id.* ¶¶ 14, 17.) Specifically, the TAC newly alleged that Inmate Bevell "had received citations, or Rules Violations Reports, for violence against inmates or weapons as recent as a year before he was placed in Plaintiff's yard." (*Id.* ¶ 15.) And, as to Defendants' knowledge, Plaintiff asserted that Defendants were aware of Inmate Bevell's citations, knew Inmate Bevell's history included attacking "cellmates[] and weapons violations," "knew [Inmate Bevell] was a threat to Plaintiff and other inmates similarly situated," knew he was a Level 4 inmate, and "disregarded the threat Inmate Bevell posed to Plaintiff and other inmates." (*Id.* ¶¶ 12, 14-16, 18.) Defendant Calvert filed a Motion to Dismiss the TAC. (ECF 21.)

In a Report and Recommendation filed on July 22, 2022, this Court recommended that the district judge issue an order granting Defendant's motion to dismiss with leave to amend. (ECF 25.) The Court found the TAC was "lacking in non-conclusory factual allegations plausibly alleging Defendant was aware Inmate Bevell posed a substantial risk of serious harm to Plaintiff or anyone else." (ECF 25 at 8.) The Court determined that the allegations that Level 4 inmates are more of a risk than Level 2 inmates and that

levels are based on violence potential and behavior history were "generalized allegations that do not indicate a substantial risk of serious harm that was disregarded by Defendant." (*Id.* at 9.) As to the new allegations about what Defendant knew about Inmate Bevell, the Court explained that the TAC contained only vague allegations that Bevell "had received citations, or Rules Violations Reports, for violence against inmate *or* weapons as recent as under a year before he was placed in Plaintiff's yard." (*Id.* at 10 (emphasis added).) The Court stated, "Without more factual detail, the citations do not sufficiently support the allegation that Defendant was aware of a substantial risk of harm to other inmates based on them." (*Id.* at 11.) The Court concluded, "[T]he TAC lacks sufficient factual allegations that would allow the Court to draw the reasonable inference that Defendant was deliberately indifferent to Plaintiff's safety." (*Id.*) District Judge Houston issued an order adopting the Report and Recommendation on August 16, 2022. (ECF 26.)

B.   **Fourth Amended Complaint**

On October 5, 2022, Plaintiff filed a Fourth Amended Complaint ("4AC") against Defendant Calvert and Doe Defendants. (ECF 27.) Most of the allegations in the 4AC are the same or similar to Plaintiff's prior complaints, including that the ICC has four levels of classification, Levels 1-4, and the lower the number assigned, the less of a risk the inmate is deemed to be based on factors such as violence potential and behavior history; Plaintiff was a Level 2 inmate; the yard he was on was intended only for inmates classified as Level 2 and 3; Inmate Bevell was a Level 4 inmate and Defendants knew this; Defendants improperly placed Inmate Bevell in Plaintiff's yard, and Defendants knew of Bevell's history of attacking inmates and weapons violations. (4AC ¶¶ 10-13, 15-16.) Plaintiff adds a new allegation not contained in the prior complaints: "Inmate Bevell had just completed time in the Segregated Housing Unit ("SHU") for stabbing another inmate, which R. Calvert and [Doe Defendants] were aware of." (*Id.* ¶ 14.) The 4AC also supplements Plaintiff's allegation that Inmate Bevell had received other citations for violence against inmates or weapons "as recent as under a year before he was placed in Plaintiff's yard" by adding that those other citations were "apart from the

one he had just completed time in the SHU for," and reasserts that Defendants were aware of his citations. (*Id.* ¶¶ 17-18.) Plaintiff contends again that Defendants disregarded the threat posed by Inmate Bevell to him and other inmates; no penological interest existed for placing Bevell in Plaintiff's yard; and Defendant Calvert, as the chairperson of the ICC, "makes the final decision about where an inmate is placed." (*Id.* ¶¶ 20-22.) Plaintiff then reiterates his prior allegations that Inmate Bevell attacked him, he sustained seven cuts and two stab wounds, received seven stitches, re-tore his right rotator cuff for which he had undergone surgery four months prior to the attack, and experienced anxiety and post-traumatic stress disorder. (*Id.* ¶¶ 24-26.)

Plaintiff's 4AC asserts a claim for negligence/wrongful act and omission under California Government Code § 844.6(d) (claim one) and a 42 U.S.C. § 1983 claim for failure to protect under the Eighth and Fourteenth Amendments (claim two). (*Id.* at 6-7.)

## II.   LEGAL STANDARDS

### A.   Motion to Dismiss

Defendant Calvert moves to dismiss Plaintiff's 4AC pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF 29.) A motion to dismiss under Rule 12(b)(6) may be based on either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (citing Fed. R. Civ. P. 8(a)(2)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (citation omitted) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.").

When considering a Rule 12(b)(6) motion to dismiss, the Court must "accept all allegations of material fact in the complaint as true and construe them in the light most favorable to the non-moving party." *Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters*, 497 F.3d 972, 975 (9th Cir. 2007). "The court need not, however, accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *see also Iqbal*, 556 U.S. at 679 ("[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 555 (2007) (citations omitted).

### B.   42 U.S.C. § 1983 Standard

Plaintiff's failure to protect claim is brought under 42 U.S.C. § 1983. (ECF 27 at 6-7.) "Section 1983 provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights." *Conn v. Gabbert*, 526 U.S. 286, 290 (1999). The statute "offers no substantive legal rights, but rather provides procedural protections for federal rights granted elsewhere." *Roberts v. Klein*, 770 F. Supp. 2d 1102, 1111 (D. Nev. 2011) (citing *Albright v. Oliver*, 510 U.S. 266, 271 (1994)). "Section 1983 is a 'vehicle by which plaintiffs can bring federal constitutional and statutory challenges to actions by state and local officials.'" *Naffe v. Frey*, 789 F.3d 1030, 1035 (9th Cir. 2015) (quoting *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006)). "To state a claim under § 1983, a plaintiff [1] must allege the violation of a right secured by the Constitution and laws of the United States, and [2] must show that the alleged deprivation was committed by a person acting under color of state law." *Id.* at 1035-36 (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

### C. Failure to Protect

"[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan,* 511 U.S. 825, 833 (1994) (citations omitted); *see also Labatad v. Corrs. Corp. of Am.*, 714 F.3d 1155, 1160 (9th Cir. 2013) ("The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates, which has been interpreted to include a duty to protect prisoners.") (citing *Farmer*, 511 U.S. at 832-33 and *Hearns v. Terhune,* 413 F.3d 1036, 1040 (9th Cir.2005)). "It is not, however every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834. "The failure of prison officials to protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment violation when: (1) the deprivation alleged is 'objectively, sufficiently serious' and (2) the prison officials had a 'sufficiently culpable state of mind,' acting with deliberate indifference." *Hearns*, 413 F.3d at 1040 (quoting *Farmer*, 511 U.S. at 834).

#### 1. Deliberate Indifference

"Deliberate indifference is a high legal standard." *Toguchi v. Chung,* 391 F.3d 1051, 1060 (9th Cir. 2004). An official must "know[] of and disregard an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837;[2] *Labatad*, 714 F.3d at 1160. "'Deliberate indifference entails something more than mere negligence but is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *Hearns*, 413 F.3d at 1040 (quoting *Farmer*, 511 U.S. at 835) (internal

---

[2] In defining deliberate indifference, *Farmer* explains that the standard arises "from the principle that only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Farmer*, 511 U.S. at 834. "The Eighth Amendment does not outlaw cruel and unusual 'conditions;' it outlaws cruel and unusual 'punishments.'" *Id.*

alterations omitted). "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under [the Supreme Court's] cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

## III. DISCUSSION

### A. Eighth Amendment

Defendant Calvert moves to dismiss the 4AC on the grounds that it is nearly identical to the previously dismissed TAC and contends that because Plaintiff has failed to allege a cognizable federal claim despite having five opportunities to do so, his motion should be granted without leave to amend. (ECF 29 at 1-2.) He argues that the 4AC "simply adds a few more conclusory statements that are not supported by factual allegations, and do not address the court's reasoning to dismiss his prior complaints." (ECF 29-1 at 1.) He acknowledges the new allegations in the 4AC, *see* 4AC ¶ 14 ("Inmate Bevell had just completed time in the [SHU] for stabbing another inmate, which R. Calvert and Does were aware of.") and *id.* ¶ 17 ("Inmate Bevell had received other citations, or Rules Violations Reports, for violence against inmates or weapons as recent as under a year before he was placed in Plaintiff's yard apart from the one he had just completed time in the SHU for."), but contends these statements insufficiently allege that Defendant Calvert knew Inmate Bevell would harm Plaintiff if they were both housed on the same yard. (ECF 29-1 at 6.) Defendant points to the lack of any allegations that Calvert knew Inmate Bevell would harm Plaintiff or anyone else on the yard, that he knew of any issues between Bevell and Plaintiff, that he suspected Bevell would attack Plaintiff, or that Plaintiff raised any concerns to Defendant or any prison employee. (*Id.*) Defendant Calvert also asserts that he was "merely the chairperson of the [ICC] that assessed Bevell's placement." (*Id.* at 2.) He contends that he would have had to have had actual notice that Bevell would attack Plaintiff to have been deliberately indifferent to Plaintiff's safety. (*Id.*)

Plaintiff, relying on Ninth Circuit Manual of Model Civil Jury Instruction 9.28 (Particular Rights–Eighth Amendment–Convicted Prisoner's Claim of Failure to Protect),

argues that he has made factual allegations for each element of a failure to protect claim. (ECF 34 at 4.)[3] In particular, he states that Defendant Calvert acted with deliberate indifference when he placed Inmate Bevell into Plaintiff's yard "despite his classification as a higher risk, his recent SHU term for stabbing another inmate, and his recent history of violence against inmates and weapons violations." (*Id.* at 5.) He argues that Calvert, in his role as chairperson of the ICC, would have known about Bevell's classification status and history of violence and thus knew the danger of putting Bevell in Plaintiff's yard. (*Id.*) Additionally, he asserts that Defendant Calvert's knowledge of Inmate Bevell's tendency to attack inmates and have weapons, his SHU term for stabbing another inmate,

---

[3] This instruction provides:

> In order to prove the defendant deprived the plaintiff of [the Eighth Amendment right to be free from "cruel and unusual punishments," the plaintiff must prove the following elements by a preponderance of the evidence:
> 1. the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;
> 2. those conditions put the plaintiff at substantial risk of suffering serious harm;
> 3. the defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and
> 4. by not taking such measures, the defendant caused the plaintiff's injuries.
>
> With respect to the third element, the defendant's conduct must be both objectively unreasonable and done with a subjective awareness of the risk of harm. In other words, the defendant must have known facts from which an inference could be drawn that there was a substantial risk of serious harm, and the defendant must have actually drawn that inference.
>
> *See* Ninth Circuit Model Civil Jury Instruction No. 9.28 (2017).

and the dangers of placing Level 4 inmates with Level 2 inmates, would have meant that Calvert had more than a "mere suspicion" that an attack would occur. (*Id.* at 6-7.)

As discussed above, the Court found that the TAC and prior complaints lacked non-conclusory factual allegations plausibly alleging that Defendant was aware Inmate Bevell posed a substantial risk of serious harm to Plaintiff or anyone else. (ECF 25 at 8.) Unlike the allegations in the TAC, which were vague and conclusory, the new allegation in the 4AC that Inmate Bevell had just completed time in the SHU for stabbing another inmate at the time he was placed in Plaintiff's yard is a non-conclusory and specific factual allegation that raises an inference that Defendants knew of facts from which the inference could be drawn that a substantial risk of harm existed, and that Defendants drew that inference. *See Farmer*, 511 U.S. at 826 ("[A] factfinder may conclude that the official knew of a substantial risk from the very fact that it was obvious."); *see also Berg v. Kincheloe*, 794 457, 459 (9th Cir. 1986) ("The [deliberate indifference] standard does not require that the guard or official believe to a moral certainty that one inmate intends to attack another at a given place at a time certain before that officer is obligated to take steps to prevent such an assault.") With the inclusion of the new factual allegations, Plaintiff's 4AC adequately pleads that Defendants knew placing Inmate Bevell in the same yard as Plaintiff presented a substantial risk that he would stab Plaintiff, given their knowledge of Bevell's recent history of being placed in the SHU for stabbing another inmate, and of his other citations for violence against other inmates or possessing weapons, and they acted with deliberate indifference to Plaintiff's safety by placing Bevell in his yard irrespective of that risk. *See Farmer*, 511 U.S. at 837 (holding that deliberate indifference exists when "the official knows of and disregards an excessive risk to inmate health or safety"). Accordingly, the Court finds that Plaintiff's allegations in the 4AC are sufficient to state a failure to protect claim under the Eighth Amendment. The Court therefore RECOMMENDS that Defendant Calvert's motion to dismiss the Eighth Amendment claim be DENIED.

/ / /

### B.     State Law Claim

In his first claim for relief in the 4AC, Plaintiff asserts a claim for negligence/ wrongful act and omission under California Government Code section 844.6(d). (4AC at 6.) Although a public entity may not be held liable for an injury to a prisoner under section 844.6, a public employee is not exonerated from "liability for injury proximately caused by his negligent or wrongful act or omission." Cal. Gov't Code § 844.6(a)(2), (d). Here, Defendant seeks dismissal of this state law claim if Plaintiff's federal claim is dismissed. (ECF 29-1 at 7.) Because the Court does not recommend that Plaintiff's federal § 1983 claim be dismissed, the Court RECOMMENDS that Defendant's motion to dismiss Plaintiff's state law claim be DENIED.

### C.     Fourteenth Amendment

In his second claim for relief in the 4AC, Plaintiff asserts a 42 U.S.C. § 1983 claim for failure to protect under the Fourteenth Amendment, in addition to the Eighth Amendment. When a specific constitutional Amendment "provides an explicit textual source of constitutional protection against a particular set of government behavior, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Albright*, 510 U.S. at 273 (quotation marks omitted). Thus, "[a]ny "protection that 'substantive due process' affords convicted prisoners against excessive force is . . . at best redundant of that provided by the Eighth Amendment." *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1986). Here, Plaintiff's failure to protect claim falls squarely under the protections of the Eighth Amendment. *See Farmer*, 511 U.S. at 832-33. As a result, his due process claim is preempted by the Eighth Amendment and should not be analyzed as a substantive due process claim under the Fourteenth Amendment. *See Easter v. CDC*, 694 F. Supp. 2d 1177, 1187 (S.D. Cal. 2010). Accordingly, the Court RECOMMENDS that Plaintiff's claim under the Fourteenth Amendment be DISMISSED without leave to amend and that his § 1983 claim for failure to protect proceed under the Eighth Amendment only.

## IV. CONCLUSION

For the reasons outlined above, **IT IS RECOMMENDED** that the District Court issue an Order: (1) Approving and Adopting this Report and Recommendation; (2) **DENYING** Defendants' Motion to Dismiss the Eighth Amendment claim and state law claim; and (3) **DISMISSING** Plaintiff's Fourteenth Amendment claim without leave to amend.

**IT IS HEREBY ORDERED** that any written objections to this Report must be filed with the Court and served on all parties no later than **June 21, 2023**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that a reply to the objections shall be filed with the Court and served on all parties no later than **July 5, 2023**. The parties are advised that the failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998).

Dated:  June 7, 2023

Hon. Bernard G. Skomal
United States Magistrate Judge